Thank you. George Akwo for Appellant Sally 21. There are four separate and distinct reasons, Your Honors, why the district court order should be reversed and this case sent to trial by jury. Number one is that the court decided this case in the generic category in the trademark continuum. We think the evidence showed it should either be descriptive or even suggestive category that the analysis should have been undertaken. Number two, that even if you look at it in the generic category, the genus was wrong. The district court got the genus wrong. Number three is even if you look at it in the generic category, the district court failed to specifically define the relevant consuming public because that's the baseline determination that has to be made before you make a decision whether something is generic as to that particular genus. And number four, there were numerous Rule 56 violations in that the district court disregarded evidence such as the evidentiary value of the trademark certificate. The district court basically accepted all of Hublot's evidence, which clearly has some credibility and issues. And under Rule 56, if you have evidence that has some issues, you have to look at it in the light most favorable to the non-moving party. And if the district court had done that, we should have gone to trial by jury. So for those four reasons, your honors, I think the court needs to reverse the order and send us to trial. Before I go into details though, there is some issue as to the standard of review that Hublot raised and I think is the novel from Yellow Cab case, Committee of Idaho versus Yoast, Self-Realization, Entrepreneur Media. This court has been specific that in the grant of summary judgment in trademark cases, the standard is the novel review. Now, why is the category of generic not applicable in this case? Several reasons, your honors. Number one, there is no part of a watch that's called red gold, none. The record shows that Crusoe put in a declaration you have straps, you have the watch face, you have the time piece. There is no watch on this earth that has a part called red gold or a part called an alloy of copper and gold. Now, second is that in the industry, Hublot itself admits that this product that Hublot calls red gold is merely an ingredient  That's not disputed. So they take it as an ingredient. So what we have here, unlike all the other cases where the litigants actually manufacture or sell the actual product for which the name attaches, neither Hublot nor Solid 21 sell any alloys of copper and gold, they sell watches. And at best, any alloy of copper and gold is merely an ingredient in those watches. So that is why Entrepreneur Media is exactly on point. And in that case, this court decided it in the descriptive category. Council, your time is ticking. Can I get you to direct, can I direct you to my question? Yes, please. If you don't mind too much. So you talked about the relevant consuming public. How should the relevant consuming public have been defined? The relevant consuming public is simple. It should have been defined as watch and or jewelry buyers, the actual consumers. My next question is, I think that the district court excluded consumer declarations because there's a rule set 37 violation, is that right? Well, yes, but it shouldn't have, and in your de novo review, my response is twofold. Number one- I haven't asked the question yet. The question is, those declarations were all dated January of 2014. And the initial disclosures were due May of 2011. Right? Correct. So these declarations didn't exist at the time of the initial disclosures? Correct, Your Honor. By a couple of years didn't exist. All right, so my understanding is that the concern was that the names of these people weren't included in the rule 26 disclosures, is that right? That is correct, Your Honor. Okay, they weren't identified. Now, at the time they weren't identified or the initial disclosures were swapped, wasn't there also a stipulation that discovery would not be taken? No, Your Honor, I don't recall there being a stipulation, but even if there was, the district court provided a remedy in two ways. The district court asked Hublot whether they want to conduct discovery on these witnesses, and under rule 56, as this court knows, the district court can make that opportunity available, and Hublot refused. That's number one. Number two, Your Honor, if you look at the genesis of the case, the district court's first order was denying summary judgment. In other words, the case was open. Then one and a half years later or so, the district court grants summary judgment. In between that time, there was ample evidence, there was ample opportunity, Your Honor, to take these depositions or whatever needs to be discovered as to these witnesses. Hublot refused to do that, and the sanction is you have to look at prejudice. So there was no prejudice, and this court should look at those declarations in its de novo review. Okay, so now, the issue as to what category applies, as I said, it is descriptive category, and that's why this court said in a lot of cases, including Filipino Yellow Pages, Entrepreneur Media, Committee of Idaho versus Yoast, that the proper analysis is descriptive. Why? Because in the descriptive category, if you have a situation where the mark merely describes an ingredient or component or characteristic of the product that the litigant is selling, in this case, they sell watches. At best, Hublot says the product called red gold is a main ingredient of the watch. That is why it is the descriptive as opposed to the generic category that should have applied. Second, there's even some evidence that was presented as potentially even suggestive as opposed to made descriptive. Dr. Butters said, Your Honor, that a consumer might need a mental leap to look at the product and associate with the mark red gold. And that, Your Honor, is the classic definition of descriptive, when a mental leap is needed to associate the mark and the product. That's what this court said in the Victoria's Secret versus Fortune dynamic. Exactly. At least part of Dr. Butters' declaration wasn't considered, right? Yes, Your Honor, correct. It was excluded. Correct. Do you wanna speak to that? Yes, because there have been cases where the district court says, for example, that I will not consider Dr. Butters on the issue of genericness only as to dictionaries. The district court cited no authority for that proposition. And ironically, Your Honor- Well, she did. She said it went to the ultimate issue. Correct. But there have been cases where the lexicologist, lexicographer is allowed to testify as to whether a mark is generic or even suggestive. In the Kedl's case that the district court cited, the same Dr. Butters was the expert witness who testified on the issue of whether it was generic or not. And so, can you just follow through and explain to me why you think that, what rule of evidence did allow his declaration to be admitted, please? The entire declaration was just on this particular issue, Your Honor. Whatever was excluded. Right, the exclusion as to his opinion that you need a mental leap to associate red gold with the product that- And she excluded that because she thought it went to the ultimate issue. Correct. And your response is that it was admissible because why? Well, it was admissible because there's precedent for allowing experts to testify as to the issue of genericness directly. Like I pointed out, it had been happening in the Kedl's case, it was allowed. In other cases, it was allowed, Your Honor. So, and then secondly, in Zabmondo, this court says the imagination test is the primary criteria for evaluating whether a mark is suggestive. That is relevant evidence by Dr. Butters that goes to show or create an issue whether this mark is even suggestive. So, the determination that this mark said it was in the generic category should be reversed. And as this court said in Zabmondo, when a mark is, whether it's descriptive or subject to secondary meaning were matters of disputed fact, not admissible. When I first saw this case and I read, began to read the briefs and look at the district court's order, and I saw what it was about, red gold, what struck me is it seemed just like no different than yellow gold or white gold, which are generic. There is a difference, Your Honor. And the difference is that this project that I call red gold is neither red nor gold. Yellow gold is gold. That's the natural color of gold is yellow. How about white gold? It's white. So, that is why it is a suggestive mark. I said, put that. How about green gold? Green gold is green in color. There is no such color and it's undisputed that red gold is red or gold. It's not. So, therefore, the consumer, the relevant consuming public have to make a mental leap, Your Honor, to associate this what they call red gold with the mark. And when you do that, you are in the suggestive, at least, or at least the descriptive category. That is the error of the district court and it should go to trial on that issue. The second issue, even if you stay with the generic category, Your Honor, the genus has to be decided. In this case, the district court says, oh, it's the jury. But in the jury, there are different aspects of jury and that's why this court, in a lot of cases, Advertise Inc. versus Orwell, said you must be specific as to what genus applies. In the Yost case, Committee of Idaho versus Yost, this court approved what the district court did, was very specific as to what genus applied. But in this case, you can't just say it's jury. The proper genus should have been watch and or jewelry retailers. Because that's what the two litigants do. They sell watches. Now, how did the district define it? The district just said jury. It's a problem. Okay, and why is that? Well, how does one go about defining the genus? Because you look at exactly what they do, Your Honor, and who, what they do and who they sell to. Solid 21 only manufactures watches? They sell watches to the consumers, correct. Watches. Correct, and they sell jewelry, but they sell watches to consumers. Hublot buys. And the jewelry that Solid 21 sells is not red gold. Correct, Solid 21, the evidence showed in the record that Solid 21 uses the mark as a brand, as a source identifier, correct. Hublot, Your Honor, doesn't sell jewelry. All they sell is watches to consumers. So the proper genus should have been watch retailers because it's not secret that in the jewelry or watch industry, there are different aspects. Red gold, though, is used for jewelry. It could be used for jewelry. It could be. But it is, isn't it? No, it could be used. A lot of jewelry doesn't have red gold because red. I'm just, well, they're probably. Yes. Isn't there jewelry that's made of red gold or has a gold part of it? No, because that's the point of this case because we're saying that, sorry, we're saying that, no, it may have an alloy of copper and gold, but the lead has to be, to say that alloy of copper and gold is red gold, that's what we think the district court was wrong because there's no such thing as red gold. Now. So red gold never existed before you, before you got a trademark? Well, we're talking about a name, Your Honor. There has been, the alloying of copper and gold as it's existed, no doubt, no doubt. Was it called red gold? Well, some people in the engineers and so they did provide some evidence that an alloy of copper and gold might be called red gold. But the issue is, to the relevant consuming public, would they look at that alloy of copper and gold and decide, okay, hey, this is red gold. That is also the third reason why the district court's order must be reversed and go to trial. Why? The district court didn't even bother identifying who the relevant consuming public is. All right. You know, I'm sorry, but you're down to two minutes. Okay. I'll give you two minutes for rebuttal. Okay. So you want to save your time. Thank you. Thank you, Your Honor. Thank you. Mr. Shapiro. Good morning, Your Honors. May it please the court. My name is Robert E. Shapiro and I represent the defendant's appellees in this matter. The name of one of my clients is Ublo.  Ublo. Ublo. Yes, thank you, Your Honors. Your Honor, there's no question that Judge Gee below followed the correct procedures, both legally and in looking at the evidence and correctly found this is a generic use of the term red gold. Counsel, could you go to the evidentiary objections? Sure. I'd be happy to, Your Honor. The evidentiary objections that were made to both Mr. Ayer and his friends, colleagues, and fellow workers were made on numerous different grounds, not just the one that was a part of the colloquy that you had with Mr. Acquo. In fact, first, they were not disclosed. And as was said, there was opportunity for discovery subsequently, but they weren't disclosed until the time of the- Hold it. What's they? The names or the declarations? The names. Okay, because the declarations didn't exist. Correct. All right. But the names were not disclosed. Okay. And there was a long period where discovery was open. There was no opportunity to take the depositions of these people because they weren't identified. But that's only one of the many reasons. Were you prejudiced? I mean, it seems to me this is a funny case because they had a registered mark. And so in a way, they have to, you had the burden. So they're waiting for you to come after them. And until they know what the- Exactly the way we were prejudiced, Your Honor. And so until they know what the theory is, how are they supposed to gather their witnesses? And when they did, counsel, why didn't you depose them? They knew what the theory was because there had been a motion to dismiss previously that had raised the question of genericness. It was never a secret that genericness was going to be the issue that was going to be ultimately presented. So how were you prejudiced? Well, we were prejudiced in a number of ways. One is that when we came at them, as you say, we didn't know that they were going to use these witnesses as a response. Well, you found out because they served them on you. That's correct, Your Honor. But let me just go further. The court didn't rely exclusively on that. It relied on two other things. Yes. One is that they were all friends and colleagues and fellow workers of Mr. Ayer. And under the Self-Realization Fellowship Church case, the court's been very clear that that's not probative evidence. Secondly- And your position is- Why doesn't it go to credibility? Yeah. Pardon me? Why doesn't it go to credibility? Credibility of- Which a district court judge can't determine on summary judgment. No, the court said in the Self-Realization case that this has been determined over a course of time people in this particular circumstance are not in a position to speak objectively to what it is that happens to consumers in the marketplace. And the reason is, of course, they're familiar. It's not that they're malicious, but they're familiar with this particular use that is trying to be made of red gold, and therefore, their testimony is not probative. There are also other problems with- Well, wait a minute. Before you leave this one, please- Sure. No, no. I was going to go on to another issue- Is it your position to answer Judge Pius's question that they were properly excluded for this reason, as opposed to given less weight? Yes, because I believe that's what the Self-Realization Fellowship Church says. But then there's a further reason. But I'm not done with this one yet, counsel. And is it your question that every one of these declarations is by a friend or a colleague? A friend, a colleague, or a customer. Yes. What's wrong with the customer if the question is relevant consuming public? Because they're all people that Mr. Ayer, who is a jeweler to the stars, all people that he knew directly. And they all know the company. And the case law is pretty clear that you cannot use such things. Why? Because the people are going to have in their mind, oh, that's Chris Ayer's jewelry. That's not probative of what the general public understands by the term red gold. Okay, I think I now have your response. I think I now have your response. Thank you. There's a third reason these were excluded. So first, they weren't properly disclosed. Secondly, the Self-Realization Fellowship Church case says that evidence of this kind is not probative. And thirdly, these people were not testifying as to the generic or non-generic use of the phrase. What they were doing was talking about secondary meaning. And secondary meaning is distinct from genericness. It's a different inquiry. The inquiry is not whether this has come to have an association in the marketplace. The inquiry for genericness is, what am I, who am I test? And none of these declarations went to that question. If you look at the declarations, they're all very formulaic. They say the same thing. Oh, I remember that Chris Ayer was developing this kind of jewelry. And then they go on and say, so I associate it with him. That's secondary meaning testimony. That's not genericness testimony. Now that's related to the issue that comes up in the Self-Realization Fellowship Church case because that's exactly the problem. The question isn't what association there is in the minds of those people that are immediately connected with Mr. Ayer, but rather what is the practical meaning of this term as it is used in the marketplace? And on that, the evidence was absolutely overwhelming. I would suggest, Your Honors, that even if the declarations had been admitted, there would not be sufficient evidence given the kind of evidence that we put in in this case with respect to the use of red gold in the marketplace. There is, this case is absolutely unprecedented. You will not find another case anywhere in the Federal Reporter where the volume of evidence submitted on the use of the allegedly generic term comes anywhere near to this. So for example, if you- The Trademark Office thought it was- And that gives them a prima facie case. Subject to a trademark. That moved- It wasn't challenged for over five years. That moved the burden to us, Your Honor, and nothing more. And we know that from the Surges Center's case because in the Surges Center's case, the situation was identical. There was a registration, and the question was, was this registration proper? And in Surges Center's, there was just a small amount of evidence that the court looked at about what was in the various reference books, the dictionaries and whatever, and said, look, it's very clear that the way in which people use this term, Surges Center, is in a generic sense. In our case, we had 900 pages of uses of red gold that date all the way back to ancient times that included competitors of, the current competitors who, in 1940, were using the term red gold to refer to watches and not as a designation of source, but rather with respect to the product feature that is involved here. If I can just say something about product feature, Mr. Acquo's statement that ingredients are necessarily not generic, that's incorrect, right? And this wasn't described as an ingredient. It was described as a product feature, the exact language of Judge Pegerson's decision in E.A. and Jake Callow, where you said a product feature cannot be anything but generic. That's the specific statement there. And that's what you have here. You have red gold, which is a product feature. It is on the dropdown menus of the individual sellers. A consumer comes in, says, oh, I want a watch. I like this style of watch. What color do I want? Do I want white gold? Do I want yellow gold? Do I want pink gold? Do I want red gold? Which gold do I want? Now, all of these golds, Your Honor, Judge Pez, as you mentioned, are very different. And we submitted an affidavit from Professor Anthony Lent, who set out the diagram. You'll find it in his declaration. A diagram, a triangle, which shows how each one of them gets the designation. Red gold, pink gold, not the same thing, right? And nor is rose gold, not the same thing. These are different product features, which necessarily cannot be a trademark. They are generic, necessarily under the case law. I would also like to talk about the other evidence. I mean, the evidence just goes on and on and on. And it relates to the consuming public, as well as to the jewelers who sell to the consuming public. In Mr. Lent's declaration, there have to be at least 15 sources, things like Good Housekeeping Magazine, encyclopedias that are available to the general public about jewelry, all kinds of articles that were written, all kinds of public, popular, Game of Thrones, as mentioned in there, all of these various sources, all of which use red gold in a generic way. I might note, with respect to Mr. Ayer's declaration, which was also regarded as insufficient, he attaches to that declaration, numerous articles in which the jewelry he sells for movie stars is referred to as red gold jewelry. Not with the registration, not with the suggestion of the designation of source, but because it's the kind of gold that is in the jewelry. It's- Who's the relevant consuming public? Well, people who buy watches and jewelry, and it's both. So some of these declarations that you say were correctly excluded are, I understood you to say they were excluded because they're by people who bought the jewelry. They are by people who are friends of Mr. Ayer who bought the jewelry. And that's an important distinction because what we're not doing- So is this only the friends who are properly excluded? No, also his fellow workers, those people that are regular customers of his, why? Because- Wait a minute, wait a minute. There's a difference between the personal affiliation and whether these folks purchased the watches because I'm hearing you say, as to the latter category, the people who purchased the watches, that they're both members of the relevant consuming public and also their declarations were appropriately excluded. So can you help me out with that? Yes, because they all have this close affiliation with Mr. Ayer. But that's different. So you're telling me then the reason they're appropriately excluded is because they have a close personal affiliation and that's quite separate than what you just told me a minute ago, which is that they are appropriately excluded if they purchased the watches. Oh, I'm sorry, Your Honor. I must have misspoken. What I meant is that they were purchaser, I thought I was addressing your question about whether they were members of the consuming public. Yes, they did purchase watches, but they were affiliated in some way with Mr. Ayer. So it's the personal, again, it's the personal affiliation that you think knocks them out. It's one of the things that knocks them out. There are, as I mentioned, there are three different things that knock them out. Well, okay, I understand the Rule 26, you think violation, and I understand why you think your client was prejudiced, I think. And I'm just trying to get at this one now. So thank you for that clarification. Okay, thank you, Your Honor. I wanted to address a couple of the other issues that Mr. Acquo raised with you. This notion that what you do is you look at the red gold and you say, oh, that must be of the genus of metal alloys. This is backwards. This is not how the process is done. What you do is you look at the genus, which is jewelry, and then you see how in that genus this particular phrase is used. This is right out- Why isn't it watches? It's not watches for a number of reasons. One is, that's not the classification under which he filed. He filed under jewelry. But he's not defending the whole broad classification, and he doesn't have to. You're not permitted to get a separate registration for the watches. He filed under jewelry. And by the way, there is no argument that I found in his appellate brief where he says that jewelry is the wrong genus. He makes the argument that because it's the right genus, metal alloys, therefore, are not the right genus, and therefore, this is a metal alloy and can't be a species. You have two and a half minutes, and I haven't asked you about Dr. Butters yet. So can you just tell me what is your best authority? I promise I will go read about this, about how we should identify the genus. Well, the way you should identify the genus is the way in which the district court went about considering what the genus was. I'm looking for the authority, counsel, the authority. Well, she went through a process where she- I know what she did. I'm asking, what's your best authority for how it ought to have been done? Oh, well, the advertised.com case does this very well. The Surgeon Center's case does this very well. The Self-Realization Fellowship Church does this very well. All of these go about and look at what it is that the genus is, and they all do it the same way, and the judge did it that way. Can you tell me why Dr. Butters' declaration was properly excluded? Well, not all of it was excluded. I understand. The judge only excluded correctly those things that went to the ultimate issue, right? Now, it's really important because Dr. Butters was not in a position to say anything about the ultimate question. The reason is- What about Rule 704? What about Rule 704? In what respect, Your Honor? It's a question of fact, right? Well, the- There's quite a bit of authority. This is a question of fact about what the relevant consuming public thinks or doesn't. He didn't have any opinion about the relevant consuming public because he never studied it. All he did was study the dictionary definitions. If you read his declaration, he specifically acknowledges that he did not read any of the underlying documentation in the case as to what the consuming public believed or didn't believe. All he said was, on an abstract basis, what is it that I would get as a lexicographer from this particular use of terms? And he came up with all kinds of speculative stuff about what red gold might mean. The only thing he didn't look at is how the term was actually used by the consuming public. So is it- I'm not sure the answer to my question. My question is why was it properly excluded and the part that was excluded, and I think you're telling me that it was what? Well, the part that was excluded is a part that goes to the ultimate question. Experts are not allowed to testify as to the ultimate question. This is standard trial stuff. They can't talk- That's not quite true. That's not right. That's not quite true. In my- No. Well, I gotta say, in my experience, but the, in any event- What if we disagree with you? Okay, I'll accept the disagreement, Your Honor, and I will also acknowledge that, assume that he's permitted to testify to that. It doesn't change anything. Why? Because he couldn't have been commenting on how the term is used by the consuming public. That's exactly the problem with his testimony. His testimony doesn't say anything about the actual issue before the court, which is, how is this term understood? So you think that the prop, again, you think then if we don't agree with the reason that was given, you think it would have been properly excluded because it's not relevant? Not that it's not relevant. It doesn't go to anything in the case. Yeah, in the end, I guess it is irrelevant. I mean, he can testify as to how it is that these terms strike him as a lexicographer, and that has been used in other cases, but it's very, very, very weak evidence of exactly how it's used in the marketplace, particularly in a case like this, where he acknowledges he doesn't know anything about the underlying. It's been admitted in other cases, right? Something similar to this. I don't know whether in that other case, Dr. Butters actually had read the record. In this case, it was clear he had not read the record. He did not know any of the information that was otherwise provided as to how the term red gold was used in the industry, meaning by that, the consuming public and those who sell to the consuming public. Okay, thank you. You've gone over your time. Thank you. It goes by fast. I know. Thank you, Your Honor. Quick, Your Honor. Thank you for your question. All right, as to Dr. Butters, Rule 702 and 704 allows for expert testimony on the ultimate issue. In the Kedl's case, Chief's case, he was allowed to testify on the ultimate issue. The declarations, there were not nowhere in those declarations said they were friends. They were watch consumers. In fact, in one of those declarations is Robert Philotel. Many of them say that they met Mr. Ayers many years ago. Right, to buy watches from him because he's a small business. That's how small businesses operate. You know the owner. The case that opposing counsel's relying on says that those types of declarations have little probative value. Right, because- It doesn't say no probative value, but why was she wrong? Right, because in self-realization case, Your Honor, that case was just friends of the trademark holder talking about what the meaning of the word is. It's completely different from our case, Your Honor. Okay, then secondly is the Lanham Act says evidence of source identification is relevant in a genericness inquiry, and evidence of how the trademark holder is using the mark is relevant. Those declarations go to exactly those points as to how the source identification and how the trademark holder is using the mark. So that evidence is relevant. Your Honor, also, the district court said we didn't bring evidence. What the district court did was discard exactly the actual evidential value of the trademark certificate. In many cases, they say, hey, the trademark certificate alone creates a trouble issue of fact, but we brought trademark certificate and a lot of other evidence. We brought evidence of suggestiveness. We brought actual consumers. We brought 112 media articles, all of which go to show source affiliation. We brought evidence of expert in the industry. We brought Robert Filotel, who used to work for one of the watch industry giants, and says we always thought this was a source identifier. At the very least, there was numerous trouble issues of fact, and the district court was required to resolve all those, look at those in favor of the non-moving party and send this case to trial. That's what I ask this question. Okay, thank you, counsel, very much. I appreciate your arguments, they're very helpful. Thank you. Matter submitted.
judges: Pregerson, Paez, Christen